The second case of this morning, number 22-1354, Velasquez-Contreras v. Attorney General, Mr. Canary and Ms. Burns. Whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Abdul Canary and I represent the petitioner. The immigration judge and the Board of Immigration Appeals have certain obligations under international law to extend refuge to those who qualify for such relief. They also bear the responsibility of providing refugee protection where such protection is warranted by the circumstances of the asylum applicants claim. This particular immigration judge wrote a very thorough opinion and even before the opinion was written, gave an opportunity to clarify what the particular social group should be. And that opportunity was not taken advantage of. And what should the immigration judge have done differently then? Your Honor, this is in plain contradiction with Carrero Carrido. But you've got to put out what your suggestion of what the particular social group would be, the family of the father who was killed, is one thing. And that's what the judge was giving the counsel an opportunity to do. But instead, the counsel insisted on another, clearly, wasn't going to win, suggestion of what the particular social group was. And so, what was the immigration judge to do? Your Honor, the immigration judge has a duty to fully develop the record. The immigration judge gave him the opportunity and in her opinion, said that even if I got to that, I don't think it would work here. Because, putting words in her mouth, but when he left the San Juan Pueblo, he went to a farm near Comayaga. But when he had some problems there, that's irrelevant to this case, he then ends up in Comayaga and doesn't seem to have experienced any type of hardship there. So it looks like he could have relocated to that particular city and been fine. Consequently, he doesn't really have a good asylum case at this point. And if he does to any extent, it's because his counsel messed up. As a matter of fact, Your Honor, he did have a reasonable opportunity not to relocate over there. Because when he went over there, at his uncle's place, there was the guerrilla that was extorting the family. So when he got there, because the uncle did not pay the guerrilla, and what happened is they forced him to pay so he can pay the extortion money. And when he refused to do so, he was assaulted, he was beaten up. And that is the reason why he left there with his sisters. Now you're in our position. You have on appeal argued what should have been the particular social group. Counsel at the immigration hearing did not. What should we do now? By statute, Your Honor, 122989B1. What is in the statute that tells us that? The judge has a duty to develop, Your Honor. The judge failed to develop the record. The judge knew. It sounds like you're saying you might have an ineffective assistance of counsel claim, but what did the immigration judge do that was wrong? I am not going that far, Your Honor, because this, you see, the motive for the harm inflicted must be analyzed in light of the context in which the harm occurred. The pattern provides context for the petitioner claim. It may lend evidential support to your conclusion that individual instances of harm were, in fact, on account of a protected ground, Your Honor. But that's just to say that a particular social group of his family should have been raised. That's the argument that you're saying you think in your briefs to us would have been successful. But Judge Ambrose pointed out it wasn't raised by counsel. And to say that the immigration judge failed in the duty to develop the record is a bit challenging, where the immigration judge here kept asking counsel whether they were asserting a family-based particular social group and then went beyond that, even though counsel disavowed that, to in dictum make a ruling about an absence of nexus and concerns about it being sufficiently particularized. So how can it be a failure to develop the record? Isn't the issue here counsel's failure to embrace that particular social group to the immigration judge and then failure to raise that to the Board of Immigration Appeals? Judge, this case is no different than Carrera-Garrido v. Attorney General. 313 Federal Appendix 5, it is 527, by Judge Ambrose. In that case, a gentleman from Guatemala came to the United States and applied for asylum. And almost 10 years later, what happened is he was unable to apply for a cancellation of removal because it was right before the 10-year cutoff date. And in that case, he stated that he would be a former United States resident were he to go back to Guatemala. He did not raise that at the Immigration Court. He did not raise that at the Board of Immigration Appeals. But Judge Ambrose said, in that case, that immigrant and asylum is different because under asylum, the judge has the responsibility of ensuring. The judge teed up the issue and the counsel didn't bite. Your Honor, yes, I know that they did. And the judge in the footnote said, even if I consider it, it wouldn't make a difference. But the judge would have been wrong in that point because the reason why he came to the United States was because, first, his father was murdered for refusing to get himself in drug trafficking. Second, they called him the night his father was buried, the day he filed a police report. He was called and he was threatened. And after he was threatened, the police officer, the corrupt police officer, came to him and said, if you got involved in the investigation of your father's murder, we will kill you. And this is the reason why he left. This is plainly supported by the record, Your Honor. I mean, the immigration judge, I believe, he's… So, please, I said she for the immigration judge. I think it was Judge Honeyman, it was he. But you don't want to make a claim against counsel. Is that correct? First of all, I don't know counsel. Well, that doesn't make any difference, does it? And second, I would not have selected that particular social group. I would not have selected. But that's what the workers said. Well, it's clear because of what you argued on appeal. But what else could the immigration judge Honeyman have done? Because the fact that the asylum case is different, he should have… Wait a minute. Tell me how an asylum case is different in this instance where the opportunity is given to make an argument. And just to cover himself, he puts in a footnote that even if the argument was made, I don't think it would work here. But it would have worked here, Your Honor, because this is all a family membership case. The reason why he was persecuted, the reason why he came to the United States, was because he filed a police report after his father was murdered. But how do you respond to the fact that he really seemed to have had no problems once he went to the town that was a couple hours away? He did have a problem, Your Honor. On the farm outside the town. Inside the town, the answer is no. Yes. So when he went there then, when he went outside of the farm, he went to the police station. When he went to the police station to get an update on the investigation of his father's murder and what happened after he left, he got shot at. And as a reason, he believed that his life was in danger and left. In Kumayaga, did he have – he was not shot at in Kumayaga, was he? No, he was – it was when he left. Outside the farm. Yes, he's outside of the farm. So after he went and shot – And he spent several months there and he had no problem. He did have a problem, Your Honor. In the city? In the city. That's when he was shot at, when he went to the city. So he went and – I believe so, Your Honor. So when he moved out in the city, then he went to the police station to check on the murder investigation of his father. It was after he left the station. It looks to me like they killed his cousin outside near the farm. To avoid the gangs, he left to Kumayaga, the nearest big city, and apparently experienced no hardship during his months in Kumayaga. Over there, yes. But when he went to the police station to check on his father's murder investigation, that's when he was shot at. And that's when he made the decision to leave Honduras to come to the United States, Your Honor. So, yes, in this case, there was persecution because the judge in that case really failed to follow Herrera Reyes v. Attorney General. Because in that case, you do not look at isolated incidents of persecution. You have to look at the cumulative experience of the applicant. Here, the father was killed. Second, he was threatened by the person who killed the father. I think the point is that the questions that Dajan Rose put to you relate to – as you put it in your brief, he returned to San Juan Pueblo to ask at the police station about the investigation of his father. But before that, he had about a year where he lived in without incident, right? That is true. But he was still – but the issue with the guerrilla was still happening. And it was still effort for his life. And that was not the decision that the Board of Immigration relied upon to render the final decision. This case was about whether persecution really takes place and the particular social group that he announced in this case. It was not about the location part of it. It was only those two issues, persecution and the particular social group. Now, whether he was fined or whether he would have been fined in the city. So, in that case, Your Honor, the judge, I truly believe, should have developed a record. Yes, he did ask the council as to if he had any other particular social group. But the judge should have known. The judge knew that this was supported by the record. What should we do with the fact that about six years have passed and there's nothing that you've put before us that indicates during that time there have been continuing threats or an indication that people are continuing to look for him? He doesn't know because he has no other family members in Honduras. His father was murdered. The cousins was murdered. He's no longer in contact with the family. We did ask him. And he has no idea as to what happened to whether they've been looking for him. And the thing is because he was not investigating the father's murder because he was not keeping track of it. And I'm sure probably he would be just fine. But had he continued to get involved, to get himself involved with that, I am sure his life would have been in danger. But rebuttal presumption, given the fact that he has shown harm, persecution on account of a particular social group, he is presumed as a man of law to have a rebuttal. They presume to have shown a well-founded fear of persecution. And because of that, the burden shifts to the government to prove fundamental changes in circumstances or in the alternative relocation. And that should go to the government because he is proven by a man, as a man of law, there is a well-founded fear of persecution, Your Honor. So in this case, he has proven past persecution. He has that rebuttal presumption of well-founded fear of persecution. And number two, yes, the particular social group by a former counsel was not one that I would have chosen. But by statute, 1229AB1, the duty, the judge, an immigration judge has a duty to develop the record. That's your theme. We understand it. That's what you agreed. We'll get you back. Did you reserve time for rebuttal? Yes, I did. We'll get you back. Thank you.  Ms. Burns. Good morning, Your Honors. Jessica Burns on behalf of the Attorney General. As Your Honors have made clear this morning, the INA requires a petitioner to exhaust their administrative remedies before the Board of Immigration Appeals before they can raise a claim to this court. Here before the immigration judge and board petitioner presented one theory of the case that he would be harmed as a victim of crime. And before this court. There does seem to be a concern that this person goes back, that his life is in jeopardy. What would be the problem just with a remand to the immigration judge to develop further the case involving what should be the right definition of a social group instead of what was offered at the hearing in this case? Well, I think the immigration judge gave him the benefit of the doubt and went above and beyond to adjudicate an excess claim. I get it. But the right formulation of a particular social group would be the family of the father who was killed. I mean, everyone agrees on that. And there really wasn't any significant development of it other than a footnote in the immigration judge's opinion. It was a thorough opinion otherwise. And the footnote was covering all the bases. But that would seem to be something that deserves development. Petitioner's counsel here today can't identify anything more that the immigration judge could have done. Any questions that the immigration judge could have asked? Do you know if this person still has family back in Honduras? I mean, based on what petitioner's counsel says, he does not have family back in Honduras. I don't think there is anything in the record to contradict that, at least not family that he's close with or in contact with. But he can't identify anything that he would have said, any testimony that he would have provided, any additional facts that he would have set forth to show that the family-based particular social group claim would succeed. And the IJ considered it and found that it would fail for a lack of nexus. If you look at the testimony that was presented, which was thorough, the IJ found that he was targeted for reporting a crime to the police. And that's it. And so it was a personal retribution from this cartel and this corrupt police officer that they didn't want him to go to the police and report them. And that has nothing to do with him being, or at least his relationship to his father is completely incidental to the motivation of this cartel. And so there's no basis to remand on an unexhausted claim. And he was represented by counsel, and he's never claimed an effective assistance of counsel. And the IJ doesn't have a duty to create a claim that's in contradiction to the petitioner's own claim that he developed with counsel. The Seventh Circuit actually considered this issue last year in a very similar case, Pineda-Turell, 16 F. 4th, 1216. And in that case, the applicant presented one theory of harm before the agency and an entirely different theory of harm before the court of appeals. And without deciding whether the Seventh Circuit needed to adopt the Fourth Circuit's broad duty to develop the record issue, the court found that the IJ has no duty to concoct legal theories and develop a record on those theories on behalf of an applicant in contradiction of an applicant's own legal theory. So even putting aside the failure to exhaust and the failure to raise this in this case. Although here it wouldn't be a concocting anything. I mean, it's a legitimate inquiry. But the IJ did inquire about it several times during the hearing. Are you presenting a particular, a family-based particular social group claim? His counsel said no. Why should we think about it as a failure to exhaust when the immigration judge went ahead and made rulings? Because he never raised it to the board on appeal. If you look at his appeal brief and his notice of appeal to the board, family-based particular social group isn't raised at all. And exhaustion requires the claim to be raised to the Board of Immigration Appeals as well. You can't say that the board erred when it was never given the opportunity to rule on the issue. Was it the same counsel before the IJ that went before the board? No, I believe he had separate, new counsel before the Board of Immigration Appeals. Separate then, unrelated to his counsel. Strikes out twice with counsel. I'm sorry? Sounds like he struck out twice with counsel. Yes. And he's never raised an effective assistance of counsel claim. But I think as your honors have pointed out, the IJ decided, or at least in dicta decided the nexus issue and said that it would fail. So I don't even know that an IAC claim would be successful because he hasn't shown prejudice. And he hasn't shown that he would succeed on that claim. Okay. Any further questions? Just on the CAT claim, the issue there being, again, a waiver, a failure to raise it. But it was not only in the notice of appeal, but a reference to the CAT claim appears twice in the brief before the BIA. Why in those circumstances should we conclude that there was not adequate notice to the BIA? Because he didn't present any argument of why the IJ's thorough legal analysis was wrong. And the IJ comported with this court's two-step case law or two-step analysis of CAT claims and found that his claim failed on the first prong, that he failed to show it was more likely than not that he would be tortured in Honduras. And he didn't raise any specific challenge other than saying the word CAT or the word torture. And under the case law, that's not sufficient to put the board, I guess, on notice of what the specific challenges to the IJ's findings were. He also has not raised the challenge to that before this court. Thank you very much, Your Honors. Your Honor, I'm going to raise three issues. First, that's the nexus issue. Under the standard, the standard is at least one central reason for the persecution. It doesn't need to be the most dominant or the most exclusive. It needs to be at least one central reason. He belonged to the family. He was persecuted because he went to the police. No, Your Honor, he went to the police to file a complaint against those people who murdered his father. I know, but his brother, his sister, other people, relatives, were not targeted. He's the one who was targeted, not because he's a family member, but because he went to the police. He was told, don't go to the police. As a matter of fact, his family, he was targeted. His sisters were targeted. Oh, the whole – Is that in the record? Say it again. Is that in the record? I believe he came with his sister. Does he still – I mean, what family does he still have back in Honduras? Say it again. What family does he still have back in Honduras? From what we understand, he doesn't have any family. He came with his two sisters, and they still remain. And the two sisters, they won their asylum cases in the Fourth Circuit in Maryland. And the three of them came together. And their case was successful. It was based on family membership. And that's the reason why he came. It's not simply because he filed – yes, he filed a police report. And it was because of his father's murder. But if it had not been for the father's murder, he would not have been threatened or persecuted. You're saying one sister won an asylum case in the First Circuit and one sister won an asylum case in the Fourth Circuit. Is that correct? No, both sisters won their case in the Fourth Circuit. Fourth Circuit. Yes. And so both of them. And what did they – they had different counsel? Yes, they had different counsel. And their case was handled by the Baltimore – by the clinic at the University of Baltimore Law School. Didn't that clinic represent your client as well before the BIA? No, that is correct. That is the clinic that represented my client before the BIA, exactly. That's right. So what was the particular social group that the clinic suggested on behalf of the sisters? Family. Wait a minute. So the clinic made one particular social group argument on behalf of the sisters but specifically did not make that argument, the same clinic, on behalf of your client? I believe so. I don't know the circumstances. I took over the case. You had a – if that's the case and it's the same clinic that's representing both, it would seem that you have the possibility of ineffective assistance of counsel claims. Again, I'm not 100 percent sure on this case because, Your Honor, because I took over the case right after – That needs to be looked at. After the BIA decision, that's when I took over the case. But I believe – The record we have before us is the opportunity was given, and if it wasn't taken and if it's the same counsel, then I repeat myself, it needs to be investigated by you. Do you have the name or case numbers of the sisters' cases? I have the A number. Yes. Where are they? Let me get it. I have it right here. Okay. The A number is 209-994-871. That's for Sister Catherine Velasquez. And for Stephanie, it's 209-418-335. And both of them won their case in the Fourth Circuit. Do you have a copy of the opinion? No, I don't. It was an oral decision by the immigration judge. It didn't get to the BIA. Just the IJ didn't get to the Fourth Circuit. I'm sorry. Yes. Can you just get the IJ's opinion and send that to us? Oh, I can. All right. Okay. I have no further questions. Okay. Thank you very much. Thank you. Thank you. Thank you to both counsel for being with us today. And we'll take this matter under review.